**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Jaime A.H.C.,

        Petitioner,

v.

Todd Blanche, *Acting Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; Todd M.
Lyons, *Acting Director of Immigration and
Customs Enforcement*; David Easterwood,
*Acting Director, St. Paul Field Office
Immigration and Customs Enforcement*; and
Eric Tollesfson, *Sheriff of Kandiyohi*,

        Respondents.

Civ. No. 26-2600 (JWB/DJF)

**ORDER ON
PETITION FOR WRIT OF
HABEAS CORPUS**

---

James Sampson Dugan, Esq., Zelle LLP, counsel for Petitioner.

David W. Fuller, Esq., and Jaymarie Arlene Miranda, Esq., United States Attorney's
Office, counsel for federal Respondents.

---

Petitioner Jaime A.H.C. is a noncitizen who was arrested within the United States
and detained by immigration authorities without an opportunity to seek release on bond.
This case presents a narrow question: whether a noncitizen in Petitioner's posture—
treated by statute as an applicant for admission—may be held without any individualized
determination of flight risk or danger to the community without violating the Due Process
Clause.

The governing statute permits detention for noncitizens classified as applicants for
admission. But a statutory grant of executive authority does not answer the constitutional

question. What process the Constitution requires once the government deprives a person of liberty is a separate inquiry. That inquiry is central here**.**

## BACKGROUND

Petitioner is a citizen of Mexico. (Doc. No. 1, Petition ¶ 7.) He entered the country without inspection in 1991 as a 3-year-old child with his parents near Nogales, Arizona. (*Id.* ¶ 15.) He has lived in the country for 35 years and is a resident of Fergus Falls, Minnesota. (*Id.* ¶¶ 7, 15.) He has established family, community, and religious ties in the United States, including children—one with autism requiring additional care. (*Id.* ¶ 16.) Petitioner also suffers from his own health issues, including a stroke last year. (*Id.*) Nothing in the record indicates that Petitioner has a criminal record.

Petitioner was detained by ICE agents on March 13, 2026. (*Id.* ¶ 17.) He alleges that he was arrested without a warrant and was not adequately advised of his rights. (*Id.* ¶¶ 17, 21.) At the time of the arrest, he was a passenger in a vehicle that was pulled over for excessively dark window tint. (*Id.* ¶ 20; Doc. No. 1-3, Ex. 3 at 4.) The deputy contacted the Bottineau Border Patrol Station and Agent Ruben Miranda conducted an "immigration interview" with the passengers over the phone. (*Id.*) The Form I-213 record states that the passengers "admitted to being Mexican Nationals without the necessary documentation to lawfully remain in the United States." (Doc. No. 1-3, Ex. 3 at 4.) The deputy transported Petitioner to the Pierce County Heart of America Correctional Center until Border Patrol could take custody. (Petition ¶ 20.) Petitioner has since remained in custody at the Kandiyohi County Jail. (*Id.* ¶¶ 7, 19.)

Petitioner was served with a Notice to Appear ("NTA") on March 16, 2026, which

commenced removal proceedings, charging him as being present without admission or parole and lacking a valid entry document. (Petition ¶ 17; Doc. No. 1-1, Ex. 1.) On April 9, 2026, he appeared before an immigration court where he requested custody redetermination pursuant to 8 C.F.R. § 1236. (Petition ¶ 18; Doc. No. 1-2, Ex. 2 at 3.) The Immigration Judge denied Petitioner's request stating that Petitioner is subject to mandatory detention and ineligible for a bond hearing based on the Eighth Circuit Court of Appeals decision in *Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026). (*Id.*) Petitioner has a pending Application for Cancellation of Removal and Adjustment of Status with the Executive Office for Immigration Review. (Petition ¶ 23.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner argues that his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 55–63.) He also asserts Respondents violated his Fourth Amendment rights, the Administrative Procedures Act ("APA"), and the requirement that executive agencies follow their own rules under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). (*Id.* ¶¶ 64–81.)

Petitioner challenges only the lawfulness of his present detention. He does not

contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.    Analysis

### A.    Fifth Amendment Due Process

#### 1.    Statutory Detention Authority

Respondents assert that Petitioner is an applicant for admission and must be detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2) provides that applicants for admission, if "seeking admission" to the United States and not "clearly and beyond a doubt entitled to be admitted," "shall be detained" for a removal proceeding. 8 U.S.C. § 1225(b)(2). Section 1225(b)(2) does not mention a bond hearing. *See Jennings*, 138 S. Ct. at 842, 851.

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Accordingly, in the Eighth Circuit, any noncitizen present in the United States who has not been lawfully admitted, regardless of whether they are arriving at the border or living in the interior, are subject to mandatory detention

4

under § 1225(b)(2)(A). And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required under a statutory construction analysis).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, regardless of how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate recitation of § 1225(b)(2)'s meaning under *Avila*. That point, however, means only that Petitioner's detention does not represent a *statutory* violation based on the detention provision in 8 U.S.C. § 1225(b)(2). It says nothing about whether Petitioner's detention comports with constitutional due process.

Here, Petitioner's physical presence in the United States requires consideration of due process protections—he is a person in the country who has been detained. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."). Even accepting that § 1225(b)(2) mandates detention under *Avila*, the question of whether the Constitution requires additional process under the circumstances must still be considered.

### 2.    Constitutional Protections

Under *Avila*, a noncitizen who has not been lawfully admitted may be treated as an

applicant for admission and detained without bond under 8 U.S.C. § 1225(b)(2)(A). 170 F.4th at 1134–38. But *Avila* addressed statutory detention authority, not whether detention imposed through that authority may violate constitutional due process under particular circumstances. Petitioner therefore may still pursue the constitutional claim presented here. *See Jennings,* 138 S. Ct. at 851 (2018) (interpreting § 1225(b) as not requiring bond hearings as a matter of statutory construction).

The question thus is whether detention imposed through that authority, under the circumstances presented here, comports with the Due Process Clause.

It does not.

The Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present in the United States, including noncitizens, regardless of the legality of their presence. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Civil detention, while permissible in certain contexts, must be reasonably related to its purpose and justified in the particular case. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Whether civil detention satisfies due process turns on the private liberty interest at stake, the risk of erroneous deprivation absent additional safeguards, and the government's interest in continued detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). That framework guides the analysis here.

Respondents contend that no additional process is required because Petitioner is treated as an applicant for admission under § 1225(b)(2)(A). Under *Avila*, that classification is correct as a matter of statutory law, even for a noncitizen apprehended

6

within the interior of the United States. But that conclusion does not resolve the constitutional inquiry. *Avila* addresses the scope of statutory detention authority; it does not determine what process the Constitution requires when that detention authority is exercised.

Due process does not turn on statutory classifications alone, such as treating a noncitizen as an applicant for admission. It depends on the nature of the deprivation and the circumstances in which it is imposed.

Those circumstances are significant here. Petitioner was not apprehended at the border or while attempting to enter the country. He was arrested within the United States, where he has lived for more than three decades. He has established community ties, has family living here, including a child with special needs, and has no criminal history. His detention therefore implicates a substantial liberty interest, given his decades-long presence in the United States.

At the same time, Respondents have made no individualized determination that Petitioner poses a risk of flight or a danger to the community. His detention rests solely on treating him as an applicant for admission, without any mechanism for review. In that posture, the risk of erroneous liberty deprivation is substantial because there is no process to test whether detention is justified in this particular case.

The government's interests in ensuring attendance at removal proceedings and protecting the public warrant substantial weight. But those interests are not undermined by requiring a minimal procedural safeguard such as a bond hearing. A bond hearing does not mandate release. It requires only that the government justify continued detention

to a neutral decisionmaker. The administrative burden of such a hearing is modest, particularly when measured against the significant liberty interest at stake.

Under the circumstances presented here, detention is not self-justifying. Petitioner was arrested within the United States, has lived here for decades, and has received no individualized assessment of the basis for his detention. Continued detention without any process is therefore constitutionally insufficient. Due process requires a meaningful opportunity to test the justification for continuing detention.

Accordingly, Petitioner's continued detention—without any opportunity for an individualized determination—violates the Due Process Clause.

### B.      Fourth Amendment and Warrantless Arrests

Petitioner also raises Fourth Amendment and related statutory concerns arising from the circumstances of his warrantless arrest. The present record raises questions concerning the arrest, the immigration interview, warrant issuance, and initiation of removal proceedings, including whether the requirements of 8 U.S.C. § 1357(a)(2) were satisfied. *See United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Those questions need not be resolved here because Petitioner's continued detention without any meaningful opportunity for individualized custody review independently violates due process for the reasons discussed above.

### C.      Remedy

The appropriate remedy is a prompt bond hearing.

Petitioner's detention is unconstitutional because it has been imposed without any individualized determination that continued detention is necessary. Under the

8

circumstances presented here, the Constitution requires a process sufficient to test the justification for continued detention. A bond hearing provides that process. Accordingly, Respondents must provide Petitioner with a prompt custody hearing before an Immigration Judge to determine whether continued detention is justified through an individualized assessment of flight risk or danger to the community. Continued detention may not rest solely on Petitioner's classification as an applicant for admission.

Respondents will therefore be ordered to provide Petitioner with a bond hearing before an Immigration Judge within seven days of this Order. If such a hearing is not provided within that time, Petitioner must be released.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Jaime A.H.C.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2.      Petitioner's continued detention without any opportunity for an individualized bond determination violates the Due Process Clause.

3.      Respondents must provide Petitioner with a bond hearing before an Immigration Judge in Minnesota within **7 days** of the date of this Order.

4.      Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota before the bond hearing and related ruling required by this Order have occurred.

9

5. If Respondents do not provide Petitioner with a bond hearing as required by this Order, Petitioner must then be **immediately released from detention**.

6. If Petitioner is released:

 a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

 b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

 c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

 d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **June 8, 2026**, Respondents shall file a status update

concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. If released, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

8. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: May 27, 2026          *s/ Jerry W. Blackwell*
Time: 11:17 a.m.            JERRY W. BLACKWELL
                           United States District Judge

11